## Case No. 9,777.

MOORE v. UNION MUTUAL LIFE INS. CO.
et al.

[5 Ins. Law J. 517.] [1]

Circuit Court, D. Nebraska. July, 1876.

USURY — LIFE INSURANCE COMPANY LOAN — CONFESSION OF JUDGMENT.

1. The acceptance of mortgages by a life company in Nebraska in 1872, as security for loans, was not illegal.

2. Where mortgages for $20,000 were given as security for loans on which life insurance for about $80,000 was required on the life of the borrower and others, and the net loans, after deducting premiums, interest, commissions, etc., amounted to about $16,000, *held*, that the insurance was excessive, and the mortgages were usurious, and the contract void to the extent declared by the statute.

3. Where loans had been made on certain securities by a life company, and, the borrower being threatened by judgment creditors to the amount of about $6,000, the company advanced $3,000, with which its agent obtained the satisfaction of the judgments of record, after which the borrower confessed judgment for $6,000 in favor of the company, *held*, that the confession stands as security for only $3,000 with interest.

The action is brought for an accounting between complainant [James W. Moore] and the company and [John F.] Kinney, and for a decree declaring certain mortgages executed by [David B.] McMechan and his wife void, and for a perpetual injunction restraining the company from issuing order of sale or execution upon certain confessions of judgment given by McMechan to the company about forty days before he was adjudicated a bankrupt.

McMechan was a dealer in hardware, stoves, etc., in Nebraska City. In 1872 he became embarrassed; judgments aggregating several thousand dollars were obtained against him, and executions were being levied upon his stock. Kinney was the company's general agent in Nebraska. The company's loans were generally made in connection with life insurance, the applicant taking a certain amount of insurance upon his life, and paying the premiums to the company, the usual proportion being $5 of insurance to $1 of loan. McMechan applied to Kinney for $12,000, which, on application to the company, was granted, the agreement being, in con-

[1] [Reprinted by permission.]

sideration of the amount of the loan, that he should take only $36,000 insurance, pay twelve per cent. interest in advance on the loan, and pay a bonus of three per cent. upon the sum loaned to Kinney. McMechan thereupon executed his note and a mortgage upon certain realty for $12,000. Before the money had been advanced, a further loan of $8,000 was negotiated, the agreement being for $40,000 additional life insurance and the payment of a three per cent. bonus and $1,000 to Kinney. As security, a second mortgage upon the realty and a mortgage upon the stock for $8,000 were executed by McMechan, and for further security notes given by his customers were placed in the hands of Kinney. The company's limit on a single risk being $20,000, two brothers of McMechan were examined for policies and the premiums charged to him. The policies were not delivered to the applicants, and $15,000 of the insurance for which premiums were paid was not applied for, but the premiums stood as a credit on the company's books, for which a policy might be taken. The company paid the net sum, deducting premiums, interest, etc., $16,005.65, to McMechan's creditors, through Kinney, in various sums, on the order of McMechan. In January, 1874, McMechan again became embarrassed, and judgment creditors to the amount of about $6,000 threatened to contest the chattel mortgage held by the company. These judgments were satisfied of record by a further advance of about $3,000 by the company, the creditors accepting fifty per cent., whereupon McMechan, according to agreement, confessed judgment in favor of the company for $6,-734.40, and also confessed judgment in foreclosure for $8,779.11, the amount claimed as due under the second loan of $8,000, and decree was entered directing the sale of the real estate in the mortgage mentioned. In February the company issued execution upon their judgment at law, which was levied for its full amount upon McMechan's stock in trade in his store. Kinney, acting for the company, purchased the entire stock on the agreement that the goods were to be inventoried at the cost price, with freight added, and the amount credited upon what McMechan owed the company. The inventory showed a valuation of $9,000, according to the company, and from $11,000 to $13,000, according to plaintiff. McMechan's store building was leased by the company at a monthly rental of $50, and retained in its possession, and McMechan conducted the business thereafter as an employee of the company until the goods were seized by the sheriff for taxes against McMechan. It was alleged that through the negligence of Kinney in regard to collecting the notes placed with him as collaterals, a large amount was lost to McMechan. It was also alleged that a large amount had been paid by McMechan, and many notes collected or converted by the company; also that the company received from McMechan the proceeds of sales of his goods, which were misapplied. It was claimed by the company that the taking of life insurance was not a condition precedent to the loan; also that the bonus or commission of Kinney was for services to McMechan, with which the company had nothing to do; also that the advance of $3,000 was not a loan to McMechan; also that the notes given as collateral were mostly worthless; also that McMechan was satisfied with the judgment transaction; also that the stock of goods was seized and sold by the sheriff on another claim, and no consideration for them was received by the company; also that a full accounting was had with McMechan at the time of confessing judgment; also that McMechan, was put into bankruptcy by the creditors whose claims had been satisfied, by means of new obligations obtained secretly from McMechan. On the case being brought up, leave was granted to the company to file a cross bill to foreclose the $12,000 mortgage.

E. F. Warren and Savage & Manderson, for complainant.

A borrower may avail himself of usury in the contract to obtain relief, and his assignee in bankruptcy is in the same situation. Schermerhorn v. Talman, 14 N. Y. 93; Williams v. Fitzhugh, 37 N. Y. 444, citing Post v. Bank of Utica, 7 Hill, 391; Peters v. Mortimer, 4 Edw. Ch. 279; Pearsall v. Kingsland, 3 Edw. Ch. 195; Dry-Dock Bank v. American Life Ins. & Trust Co., 3 Comst. [3 N. Y.] 351; Riggs v. Powers, 6 Ohio St. 19; 1 Ohio St. 298–312; Rev. St. U. S. § 5046; Allen v. Massay, 17 Wall. [84 U. S.] 351.

The transaction was usurious, first, because interest was charged from the date of the $12,000 note, while the money was not advanced until over three months later. It was claimed that the money was ready, and it was McMechan's fault that it was not sooner disbursed, but no check was then sent by the company to Kinney for such loan, as was their usual course. Second, premiums were charged for policies not delivered. Fulton Bank v. Benedict, 1 Hall, 480; Fire Cases of Utica Ins. Co. v. Cadwell, 3 Wend. 296; New York Fire Ins. Co. v. Donaldson, 4 Edw. Ch. 199, distinguished. Third, about $15,000 of insurance was charged and paid for, on which no risk was assumed. The requiring of $80,000 insurance where only $20,000 would be accepted on the borrower's own life, and charging premiums on insurance not taken, are evidence that the insurance was a condition precedent to the loan.

The transaction was usurious on account of the excessive sums retained as charges and commissions. Kinney was not entitled to them on account of any adequate service rendered. As general agent accustomed to effect loans for the company his acts were those of the company. He was not the agent of McMechan in the transaction. Kinney re-

ceived no salary for attending to loans, but was remunerated by commissions. The company must have been knowing to the facts. Any loss imposed on the borrower, in addition to the amount lent and lawful interest, is a violation of the law restricting the lender to a specified rate. The money received by McMechan cost him thirty-three and one-half per cent. per annum. Rogers v. Buckingham, 33 Conn. 86; Butterworth v. Pecare, 8 Bosw. 671, 675–677. Tyler, Usury, 325 et seq.; Williams v. Hance, 7 Paige, 581; Bank v. Hoyt, 32 N. Y. 119; Reed v. Smith, 9 Cow. 648–650; Bank v. Owens, 2 Pet. [27 U. S.] 527; McFarland v. Carr, 16 Wis. 529; Cases of Crane v. Hubbel, 7 Paige, 413; Barretto v. Snowden, 5 Wend. 181; Condit v. Baldwin, 21 N. Y. 219, where the lender was ignorant of bonus exacted by agent, distinguished.

It is urged that the sums were willingly paid by McMechan, but the law regards usurious terms as involuntary and the result of compulsion. Schroepel v. Corning, 5 Denio, 236. Though usury paid may not be recovered, the debtor may insist on its deduction from any part of the debt unpaid, and it may be applied to the satisfaction of the principal. Farwell v. Meyer, 35 Ill. 40; Booker v. Anderson, Id. 66; Saylor v. Daniels, 37 Ill. 216, 331; Wood v. Lake, 13 Wis. 84; Gill v. Rice, Id. 549. The company were guilty of gross negligence in that Kinney did nothing more to collect the notes than to notify the debtors by letter of the fact, and request their payment, and McMechan is entitled to credit for the entire amount of the same. Jennison v. Parker, 7 Mich. 355; Watts v. Willing (Pa.) 2 Dall. [2 U. S.] 100; 2 Pars. Cont. p. 111; Lamberton v. Windom, 12 Minn. 241 [Gil. 151]; Ex parte Mure, 2 Cox, 63; Noland v. Clark, 10 B. Mon. 239; Beale v. Bank, 5 Watts, 529; Lyon v. Bank, 12 Serg. & R. 67; Bank v. Peabody, 8 Har. [20 Pa. St.] 457; 3 Lead. Cas. Eq. 556, 557; McKinister v. Bank of Utica, 9 Wend. 46; Smedes v. Bank of Utica, 20 Johns. 372; Roberts v. Thompson, 14 Ohio St. 1; Douglass v. Reynolds, 7 Pet. [32 U. S.] 113.

The mortgages given to the company were contrary to the policy of the state, prejudicial to its interests, and contrary to the express power of the statutes, and therefore void. A foreign corporation can do nothing in Nebraska contrary to the policy or statutes of the state, or prejudicial to its interests. Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 519; Paul v. Virginia, 8 Wall. [75 U. S.] 181; Ducat v. Chicago, 10 Wall. [77 U. S.] 410; Insurance Co. v. French, 18 How. [59 U. S.] 407; Ranyon v. Coster's Lessees, 14 Pet. [39 U. S.] 122; Stoney v. Ins. Co., 11 Paige, 637; Ins. Co. v. Owen, 15 Gray, 491; State Bank v. Coquillard, 6 Ind. 232; Bard v. Poole, 12 N. Y. 495; Ang. & A. Corp. (9th Ed.) § 265. At the date of these mortgages it was unlawful for a company in the state to hold or purchase real estate, except such as was necessary in

its legitimate business of insurance, and deeds or conveyances for any other purpose were void. The term "deed" included every instrument in writing by which any estate or interest in lands was created, aliened, mortgaged or assigned. Gen. St. c. 11, § 4; Revision 1873, p. 161; Rev. St. 1866, c. 25, § 4; Revision 1873, § 23, c. 25, p. 395; Id. § 46, c. 61, p. 880.

The policy of the state has been to impose similar restrictions though more liberal, on domestic corporations. Gen. St., Revision 1873, § 16, c. 33, resembling Rev. St. U. S. § 5137, p. 999, which was construed in Kansas Valley Bank v. Rowell [Case No. 7,611]. Case of Bank v. North, 4 Johns. Ch. 371, distinguished. Gen. St., Revision 1873, c. 11, §§ 19, 22, 42, 49, 61, 74, 85, 125, 165; Id. § 41, c. 33, p. 445. The company's charter provides that real estate mortgaged to it for security, or taken on loans, shall be offered for sale every four years. Under this provision the company cannot be forced to sell, and unless the mortgages are invalid a release from the mortgagor would merge the title, and the corporation would be able to bar alienation of real property. Carroll v. City of East St. Louis, 67 Ill. 568, 2 Cent. Law J. 557. If the mortgages be illegal the whole transaction is void, and cannot be enforced. Philadelphia Loan Co. v. Towner, 13 Conn. 249; Utica Ins. Co. v. Scott, 19 Johns. 1, excepted to; Coppel v. Hall, 7 Wall. [74 U. S.] 542, 558; Fowler v. Scully, 72 Pa. St. 456; Seidenbender v. Charles, 4 Serg. & R. 160; Bank v. Owens, 2 Pet. [27 U. S.] 538; Bank v. Lanier, 11 Wall. [78 U. S.] 369; Burkholder v. Beetem, 65 Pa. St. 496; Mitchell v. Smith, 1 Bin. 110; Maybin v. Coulon (Pa.) 4 Dall. [4 U. S.] 298; [Duncanson v. M'Lure] Id. 308; Badgley v. Beale, 3 Watts, 263; 6 Watts. 231; 7 Watts. 343; Fowler v. Scully, 72 Pa. St. 456.

If the $3,054.75 advanced by the company to obtain satisfaction of judgments against McMechan of record was not a loan to McMechan, as alleged by the company, it was a voluntary payment, for whose repayment they have no valid demand, and the subsequent confession of judgments might be inquired into as fraudulent. The judgments were void, having been made while the debtor was insolvent and in contemplation of bankruptcy. McMechan was adjudged bankrupt on the ground that he had confessed judgment in favor of the company, intending to give them an unlawful preference. Sections 35, 39, Bankrupt Act. The confessions estop the debtor from inquiry, but not the assignee. The judgments can only be assailed for fraud. Credit was not given to McMechan for the inventoried value of the goods, as agreed, and, if the company never received any consideration on account of a seizure by the sheriff, it is their own concern. The sheriff's claim was known to Kinney and the company at the time of seizure, and the company alleged the purchase in two previous suits. The company, having

reason to believe McMechan insolvent at the time of confessing judgment, should not be allowed to prove for more than half the debt. Section 39, Bankrupt Law. To secure themselves as against other creditors having judgments aggregating upward of $6,000, the company induced McMechan to confess for double the amount advanced, and issued execution, and directed the levy on his stock.

E. Wakely, for defendant.

The position that the company had no power to loan on real-estate security in Nebraska is sweeping and far-reaching. Millions have been so loaned by foreign corporations, and, if the position is sound, the securities are worthless, even if the loans are not void. The objection is easily met. By its charter the company had power to make such loans. Charter, § 6, p. 6; Id. § 1, p. 1. A corporation may do in any state what its charter empowers it to do in its own, provided the act is not forbidden by or against the policy of such state. Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 519; Kennebec Co. v. Augusta Ins. Co., 6 Gray, 204; American Mut. Life Ins. Co. v. Owen, 15 Gray, 494; Arms v. Conant, 36 Vt. 744; Western v. Genesee Mut. Ins. Co., 2 Kern [12 N. Y.] 258; Farmers' L. & T. Co. v. McKinney [Case No. 4,667]; Connecticut Mut. Life Ins. Co. v. Albert, 39 Mo. 181; Blair v. Perpetual Ins. Co., 10 Mo. 559; Lathrop v. Commercial Bank of Scioto, 8 Dana, 114; Connecticut Mut. Life Ins. Co. v. Cross, 18 Wis. 109; Bard v. Poole, 2 Kern [12 N. Y.] 505; 18 Wis. 109.

By the strongest implication, Nebraska statutes recognize the power of foreign companies to loan on real-estate security. St. 1866, § 5, pp. 189, 190, 193, 194, 188. This chapter applies to life companies. Gen. St. Neb. p. 428, c. 33, §§ 1, 41. Kinney had no authority to contract the loan. It was made by the company at the home office. The entire $12,000, less one year's interest and premiums, and the $8,000, less premiums, were forwarded to Kinney. The company neither knew of nor sanctioned the bonus of Kinney. It was given for services of Kinney to McMecham. There is no usury unless the lender knows of or sanctions an agreement for commission. The agent has no implied authority to do an unlawful act. If for services to the borrower, commission is not usury. The only contract was in writing by officers of the company. An agent without power to contract has no power to make a lawful agreement usurious by his own private agreement for compensation. Condit v. Baldwin, 21 N. Y. 219; Bell v. Day, 32 N. Y. 175; Thurston v. Cornell, 38 N. Y. 281; Muir v. Newark Sav. Inst., 1 C. E. Green [16 N. J. Eq.] 537; Conover v. Van Mater, 3 C. E. Green [18 N. J. Eq.] 481; Hyde v. Goodnow, 3 Comst. [N. Y.] 266; Baxter v. Buck, 10 Vt. 548; Fay v. Lovejoy, 20 Wis. 407; Rogers v. Buckingham, 33 Conn. 81; Banks v. McClellan, 24 Md. 62; Jones v.

Berryhill, 25 Iowa, 289; Mining Co. v. Gwyer, 48 Ga. 11; Beadle v. Munson, 30 Conn. 175; Corlies v. Estes, 31 Vt. 653; North v. Sergeant, 33 Barb. 350; Philo v. Butterfield, 3 Neb. 256.

The condition requiring life insurance was not usurious. The premiums were the usual rates required, without a loan. The insured had the full value of his premiums in the obligation of the insurer to pay at death. Clarke v. Sheehan, 47 N. Y. 188; Utica Ins. Co. v. Cadwell, 3 Wend. 296; New York Fire Ins. Co. v. Donaldson, 3 Edw. Ch. 199; Brooklyn Bank v. Waring, 2 Sand. Ch. 1; Dowdall v. Lenox, 2 Edw. Ch. 267; Bullock v. Boyd, Hoff. Ch. 299; Valentine v. Conner, 40 N. Y. 248; Fellows v. American Life Insurance & Trust Co., 1 Sand. Ch. 203; Stille v. Andrews, 4 C. E. Green [19 N. J. Eq.] 409; Jarvis' Appeal, 27 Conn. 432; Roane v. Bank of Nashville, 1 Head. 526.

Usury is alleged because the company took and retained papers which bore interest from a date prior to the receipt of the money by the borrower. The papers were dated as of the time of execution and acknowledgment of mortgage, which could not properly have been changed. The money was then in readiness. The only claim could be for an inadvertent omission to indorse a few days' interest credit, by which alone the discrepancy could properly be corrected. The lender has a right to interest from the time the loan is to take effect, where the money is ready and the delay in paying it over is not the fault of the lender. Bank of U. S. v. Wagner, 9 Pet. [34 U. S.] 378–399; Knox v. Goodwin, 25 Wend. 643; Booth v. Swezey, 8 N. Y. 276; Dowdall v. Lenox, 2 Edw. Ch. 266; Walker v. Bank of Washington, 3 How. [44 U. S.] 62; Muir v. Newark Sav. Inst., 1 C. E. Green [16 N. J. Eq.] 537; Howell v. Auten [1 H. W. Green] 2 N. J. Eq. 44; Ware v. Thompson, 13 N. J. Eq. 66; Auble v. Trimmer, 7 N. J. Eq. 242; Beals v. Benjamin, 33 N. Y. 61; Doak v. Snapp, 1 Cold. 180; Stark v. Coffin, 105 Mass. 328–333; Banks v. Van Antwerp, 15 Harek, 29.

This court cannot enjoin proceedings to enforce the judgments. The bankrupt law does not provide for it. Peck v. Jenness, 7 How. [48 U. S.] 612; Orton v. Smith, 18 How. [59 U. S.] 263; Ingraham v. Dawson, 20 How. [61 U. S.] 486; Freeman v. Howe, 24 How. [65 U. S.] 450; 4 Ch. 179; 7 Ch. 279.

The larger judgment was simply for the foreclosure of the $8,000 mortgage, which the bankrupt law does not prohibit. The smaller judgment was for a present consideration, for money to pay off other debts, not to get a preference. There was no fraud; it was done in good faith; and without fraud a person may advance money to an insolvent debtor, and take property as security. Cook v. Tullis, 18 Wall. [85 U. S.] 332; Gibson v. Warden, 14 Wall. [81 U. S.] 244; Tiffany v. Lucas, 15 Wall. [82 U. S.] 410; O'Connor v. Parker, 23 Mich. 22; Darby v. Boatman's

Sav. Inst. [Case No. 3,571]; Gaffney v. Signaigo [Id. 5,169]; Darby v. Lucas [Id. 3,573]; McKinney v. Harding [Id. 8,866]; Lenihan v. Hamaun, 55 N. Y. 652; Bentley v. Wells, 61 Ill. 59; Biddle's Appeal, 68 Pa. St. 13; In re Burns, 7 A. S. Ry. 100; Vogle v. Lathrop [Case No. 16,985].

No accounting respecting the collaterals is necessary. All sums received on them have already been settled between the parties. A creditor cannot be compelled to exhaust his collaterals before resorting to other securities, where the assignee represents general creditors and no lienholder. Kinney was guilty of no negligence in regard to them; there has been no conversion, nor offer to redeem them. They were practically almost worthless.

The argument of complainant against the right of the company to take mortgages is a misconstruction of the statute in which companies are prohibited from holding lands, but permitted to take mortgages, while in another chapter quoted, for certain prescribed purposes only, mortgages are included in conveyances. To hold land is a different thing from having a mortgage lien. The mortgagor holds the land. Gen. Rev. § 55, p. 881.

There is no foundation for the distinction alleged between foreign and domestic companies. Chapter 25, St. 1866, §§ 1, 2, and prohibiting section. The act of 1873 quoted was subsequent to the execution of the mortgages, and excepts life companies, while it recognizes the power to take mortgages. Case of Carroll v. City of St. Louis concerned the unlimited purchase of land, not the policy of Nebraska concerning the mortgage securities. To entitle a debtor to credit for collaterals not collected, the remedy against him must be shown to be lost through the negligence of the creditor holding them. McMecham virtually controlled proceedings to collect.

The policies were clearly delivered. They were held by Kinney ready for delivery when called for. In case of death the money could have been collected. The $300 premiums unapplied were applicable to any policy when applied for; and the company has not refused to issue a policy.

McMechan's equity under the $8,000 was worth nothing. A creditor may foreclose an equity by a confessed judgment, and no wrong be done an unpaid creditor, unless it was valuable.

DILLON, Circuit Judge. I am of opinion:

1. That the defendant company had the power to take and receive the mortgages, and they are not void ab initio.

2. I find that the mortgages are usurious. This result I reach upon the special circumstances of this case, placing it largely upon the ground that the requiring of such a large and extraordinary amount of insurance, not only upon the life of the borrower, but upon that of others, as a condition of making the loans, is a direct loss to the borrower, and in violation of the purpose and policy of the usury laws. Under the statute of Nebraska, no previous tender by the borrower is necessary as a condition of relief, and the contract, though usurious, is void only to the extent declared by the statute. Rev. St. Neb. p. 447.

3. The confession of judgment for $6,734.40 stands as a security only for $3,054, and interest.

4. The contracts being usurious, payments are to be applied in reduction of the principal.

5. An account must be taken in respect of all the transactions between the parties set forth in pleadings. The company is to be charged with the goods purchased at agreed price, $11,046.80, less amount of valid taxes thereon at time of sale, as to which proofs may be taken by the master, if the question has not been fully adjudicated. The company is to be charged with the amounts actually received on the collaterals. I find that there is no liability in respect to the alleged negligence in not collecting the collaterals. The company to be charged with net amounts received from sales of goods, deducting fair and reasonable expenses of sales, and respecting and carrying out any fair and just settlement of the parties in this regard. Also with the rent of the store at agreed rate, $50 per month. Also with any premiums charged in respect of the $15,000 life insurance for which no risk was assumed by the company. The commissions at 3 per cent. to be credited on the respective mortgages; the other charges of the agent may stand unless by further proof they are shown to be more than the value of the services rendered. The credits to the estate in bankruptcy to be applied first on the $3,054 and interest thereon; next on the $8,000 loan, and any balance on the $12,000 loan. Let interlocutory decree be drawn accordingly, and cause referred to master to take and state an account. Right reserved, on coming in of report, to modify the foregoing.